SIDNEY HUBSCHMAN, PLAINTIFF, v. JOSEPH BRODA
AND ELEANOR BRODA, HIS WIFE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided November 14, 1968.

*Mr. Allan Shoopak* attorney for plaintiff.

*Mr. Paul R. Williams, Jr.* attorney for defendants.

LANE, J. S. C.  The complaint seeks foreclosure of a real estate mortgage securing a bond of defendants to plaintiff in the sum of $109,000. Defendants admit there was a default under the mortgage but dispute the amount due, alleging usury. The matter is before the court on final hearing.

Defendant Joseph Broda, being in need of $100,000, approached James Fucetola to see if Fucetola could obtain for Broda a loan from plaintiff in the amount of $100,000. Fucetola demanded $9,000 for his services. Closing of the loan took place on December 16, 1965, at which time plaintiff advanced $109,000, this amount being secured by the bond and mortgage in question. By check dated December 17, 1965, Joseph Broda paid $9,000 to Fucetola Bros., James Fucetola's contracting concern.

The mortgage was for a period of one year at the rate of 6% interest payable quarter-annually. During that one-year period Broda made four interest payments, each in the amount of $1,635. At the expiration of the one year he was unable to raise the money to pay off the mortgage. He approached plaintiff, who granted an extension of three months for an additional consideration of $5,000. At the end of the extension period defendants were still unable to raise the money to pay the mortgage and a second extension of three months was granted by plaintiff for an additional consideration of $5,000. Upon the expiration of the second extension,

defendants still being unable to pay the mortgage, this action was instituted.

Plaintiff denies that he knew Fucetola was paid $9,000 for procuring the loan. Fucetola is in the contracting business. His relationship with plaintiff apparently started when he constructed a large store for plaintiff's former business — Two Guys From Harrison. The relationship between plaintiff and Fucetola was shown to be very close. Plaintiff had discounted $45,000 worth of notes for Fucetola as long ago as 1963. Fucetola's company had done construction for plaintiff and was engaged in business ventures with trusts set up for plaintiff's children and controlled by plaintiff. During their relationship plaintiff had loaned Fucetola or his company approximately $250,000. In connection with an apartment project in Spring Lake, Fucetola's company assisted in supervising under an oral contract, as a result of which $25,000 was paid. Although plaintiff testified that during the two-month period preceding the trial he had spoken to Fucetola twice, Fucetola testified that they had spoken at least once a week. At the time of the hearing there was $165,000 outstanding from Fucetola's company to plaintiff.

Fucetola was present at the closing of the loan. During the closing, Joseph Broda, Fucetola and plaintiff excused themselves from the room and conferred privately. Having due regard for the credibility of the witnesses, the court finds as a fact that that conference concerned the payment of $9,000. Plaintiff and Fucetola were not credible.

Additional support for the finding that plaintiff at least knew that $9,000 was being paid in connection with the loan is given by a memorandum sent to defendants by or on behalf of plaintiff. That memorandum says in part:

"Balance
$109,000.00   12-16-67
    5,000.00   Points for extension to 2-14-67

$114,000.00   12-16-67 bal."

This clearly indicates knowledge on the part of plaintiff that the amount actually retained by Joseph Broda was not $109,-000 but rather $100,000.

Although Joseph Broda contends that plaintiff in fact received the $9,000 through Fucetola's company, it is not necessary that the court make that finding. In *Ahrens v. Kelly*, 88 *N. J. Eq.* 119 (*Ch.* 1917), affirmed 89 *N. J. Eq.* 586 (*E. & A.* 1918), the court in an action to foreclose a mortgage held the transaction usurious, saying:

> "It was further contended that in case the transaction was tainted with usury, Albanesius, who negotiated the loan, was the agent of Kane, and not of Ahrens, the complainant, and that he (Ahrens) knew nothing about the arrangement between Kane and Albanesius, and that if the former had any reemdy it was by suit against the latter for illegal brokerage. The facts developed at the hearing satisfied me that the complainant, Ahrens, knew all about the Kane transaction with Albanesius, and that he must be held accountable within the rule laid down by Vice-Chancellor Van Fleet in *Borcherling's Ex'r v. Trefz*, 40 *N. J. Eq.* 502, 'that to taint a contract with usury it is not necessary that the illegal interest or bonus shall have been taken by the lender himself, but if it be shown that the illegal consideration was paid to some other person than the lender, pursuant to the terms of the contract of loan, with the knowledge of the lender, the contract must be declared usurious.' This view has been numerously followed." (at *p.* 121)

This holding appears to be in accord with the majority rule. See Annotation, 52 *A. L. R.* 2d 703, 748 (1957).

The facts surrounding the *Ahrens* case are strikingly similar to the facts in this case. At the very least here, in accordance with the terms of the contract of loan, an illegal consideration was paid, to the knowledge of plaintiff. The payment of the illegal consideration was in violation of *R. S.* 31:1–1. *In re Greenberg*, 21 *N. J.* 213, 219 (1956).

In addition, the two payments of $5,000 for extensions of the due date rendered the extensions usurious and will be deemed to have been payments on the principal debt. See *Heilos v. State Land Co.*, 113 *N. J. Eq.* 239, 242 (*Ch.* 1933).

Defendants initially urged that by reason of the fact that the loan was usurious, all payments made should be credited

to principal and that plaintiff should not be allowed to retain any interest whatsoever under *R. S.* 31:1–3. Defendants now admit that that provision is applicable not to interest that has already been paid within the legal limit but rather only to interest unpaid. In *D'Onofrio v. Galliotto,* 118 *N. J. Eq.* 271 (1935), the Court of Errors and Appeals, in modifying a .decree of the Court of Chancery, stated:

"The decree erroneously gives credit to the defendants for the full amount of interest, legal as well as illegal, already paid to the complainant on the usurious loan. The statutory provision (An act against usury, 4 *Comp. St. p.* 5705 § 2) is that in suits to collect under a usurious contract 'the amount of value actually lent without interest or costs of suit may be recovered and no more,' and there are numerous decisions in consonance therewith. But of course the lender does not sue to recover that which has already been paid to him. The pertinent words of the statute as to payments made before the bringing of suit appear in the same section and are: '* * * if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid shall be deducted from the amount that may be due as aforesaid and recovery had for the balance only.' 'The sum or sums so paid' manifestly are premium or illegal interest. Interest up to and including six per centum per annum on the amount actually lent is not illegal; consequently the deduction to be credited on that account is the usurious interest paid in excess of that percentage. *Kohn v. Kelly,* 76 *N. J. Eq.* 132, and cases therein cited; *Frankel v. Major,* 9 *N. J. Misc.* 96; *Colleran v. Wall,* 116 *N. J. Eq.* 284. Interest paid on so much of the mortgage amount as represented bonus and not money loaned was illegal and is to be applied as a credit if in conjunction with other interest moneys it totalled to more than 6 per centum per annum of the real sum." (at *pp.* 274–275)

█ The original mortgage debt, therefore, after deducting the $9,000 illegally exacted, was $100,000. During the first year there was paid $6,540 as interest at 6% on the $109,000. Plaintiff was only entitled to be paid. during that period interest at $6,000. There will, therefore, be credited to the principal sum of $100,000 the sum of $540. In addition, the two payments of $5,000 each for the mortgage extension will be applied to principal. In fact, however, notes were given. On February 14, 1967 defendant paid $4,000 on the first note. On March 6, 1967 he paid another $4,000. Not-

withstanding that plaintiff testified he unilaterally applied $1,000 to the note given for the first extension, $1,480 to interest and $1,510.20 on account of principal, this court finds that there was no such allocation at the time of payment. Therefore, this entire $4,000 will be deemed to have been paid on account of the extensions and not for any interest. The $8,000 paid for the extensions will be applied in reduction of principal. There is, therefore, due under the mortgage $91,460 ($109,000 less $17,540) for which plaintiff may have a judgment for foreclosure without interest, without costs and without counsel fees. The judgment will declare the notes cancelled and order plaintiff to deliver them to the defendants within ten days.